**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THOMAS WATERS, JR     * | |
| c/o Krieger & Zaid, PLLC     * | |
| 1920 N Street, N.W., Ste 300     * | |
| Washington, D.C. 20036     * | |
|     * | |
|        Plaintiff,     * | |
|     * | Civil Action No: 06-_____ |
|        v.     * | |
|     * | |
| CENTRAL INTELLIGENCE AGENCY     * | |
| Washington, D.C. 20505     * | |
|     * | |
|        Defendant.     * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT**

Plaintiff Thomas Waters, Jr., brings this action against defendant Central Intelligence Agency for injunctive and declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the All Writs Act, 28 U.S.C. § 1651, the Central Intelligence Agency's internal regulations and the First Amendment to the Constitution of the United States. The Central Intelligence Agency has unlawfully imposed a prior restraint upon Thomas Waters by obstructing and infringing on his right to publish his unclassified memoirs and threatening him with civil and criminal penalties.

**JURISDICTION**

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

**VENUE**

2. Venue is appropriate in the District under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Thomas Waters, Jr. ("Waters") was formerly employed by the Central Intelligence Agency from 2002-2004. He is required by virtue of a secrecy agreement to submit all writings for prepublication review. Waters is currently a senior intelligence contract analyst for the Department of Defense.

4. Defendant Central Intelligence Agency ("CIA") is an agency as defined by 5 U.S.C. § 701. Its actions have prevented Waters from publishing portions of his manuscript.

## FACTS

5. Waters participated in the first CIA training class that followed the tragic terrorist attacks of September 11, 2001. The CIA had received more than 150,000 resumes from interested individuals, and more than 100 students, to include Waters, were accepted. He entered on duty on July 15, 2002, as a member of Class 11 in the Directorate of Operations. Due to unrelated personal reasons, he left the CIA on March 5, 2004.

6. By letter dated May 27, 2004, Waters submitted, pursuant to one or more secrecy agreements, a draft non-fiction manuscript entitled *Class 11: America Responds to September 11* to the CIA's Office of Prepublication Review ("PRB") for prepublication review. The PRB is required by internal regulation and judicial rulings to issue decisions regarding submissions within thirty days of receipt of the document.

7. By letter dated September 1, 2004, the CIA's PRB responded, through its then Chairman, Paul Noel Chretien, J.D., with an eight page letter detailing the information which had been determined to be "inappropriate for disclosure in the public domain and must be revised or deleted prior to publication." Other than those portions specifically

identified as "inappropriate", all other portions of the manuscript were officially approved for release by the CIA as unclassified. As a result, Waters was legally able to disseminate the draft manuscript so long as the CIA's identified redactions or changes were made.

8. Following several phone conversations between Waters and the PRB, by letter dated September 16, 2004, which was delivered via facsimile, Waters resubmitted his manuscript for further pre-publication review. He noted that "[a]ll of the sections outlined in your memo were dropped or changed prior to sending the manuscript to a literary agency for review." Additionally, Waters provided modified language pursuant to his telephone conversations in order to meet all CIA concerns, as well as requested reconsideration of several redactions due to his providing of public source information that served as the basis for his writing.

9. By e-mail dated September 17, 2004, the PRB acknowledged receipt of the modified manuscript and informed Waters that it "will expedite our review."

10. By letter dated September 20, 2004, the PRB notified Waters that it had "completed its review of the rewrite of your manuscript entitled *Class 11 – America Responds to 9-11: Inside the Largest Spy Class in CIA History*." Only four words in the entire manuscript were determined to be "inappropriate for disclosure in the public domain and must be revised or deleted prior to publication." The PRB noted that if "you can rewrite these sections, as you did previous sections where the identity of your cover provider was changed, the Board will reconsider its objections." Other than these four words, the entire manuscript had now been officially determined by the CIA to be unclassified and Waters was free to disseminate or publish it as he saw fit. In closing, the

PRB notified Waters that "[a]fter making the changes the Board requires, you must resubmit the manuscript for final Agency review. In lieu of resubmitting the entire manuscript, you may return only the affected pages or you may verify in writing that you have made all the deletions and revisions."

11. By letter dated September 20, 2004, Waters responded to the PRB and agreed to rewrite the four words.

12. By letter dated December 5, 2004, Waters sent additional modifications via facsimile and e-mail that he had made to the manuscript to include new sections and slight changes to previously cleared text. He also submitted Powerpoint file images for review. With his materials he provided public source references to support the unclassified nature of the text modifications. Additionally, so that the PRB was not required to review previously approved text, Waters highlighted the proposed changes in color and in pen.

13. By e-mail dated December 6, 2004, the PRB acknowledged receipt of the fax and e-mail attachments and stated it "will begin our review."

14. In or around December 2004, Waters sold the unclassified manuscript to Dutton, which is part of the Penguin Group.

15. Nine months later, on September 27, 2005, not having received any word from the PRB, Waters submitted, via facsimile and e-mail, final additional changes to the manuscript. Waters noted that the changes included "edits on punctuation, spelling and grammatical errors that [Paul Noel Chretien] indicated did not need further review." Six specific substantive changes (all highlighted in yellow for the convenience of the PRB) were addressed and, as usual, Waters supplied open public source or previously

declassified materials to justify the changes. Finally, he informed the PRB that a fast turnaround was requested due to a scheduled release date of March 2, 2006.

16. The PRB acknowledged receipt of the faxed pages via e-mail dated September 28, 2005. It also suggested that Waters send them a complete copy of the manuscript in order to avoid a delay in obtaining page proofs during to the upcoming holiday season.

17. By e-mail dated October 4, 2005, Waters submitted to the PRB a copy of the previously approved manuscript, which included the recent minor additions, Dutton's cover design for the book jacket and the photographic images that had been submitted to Dutton which the CIA had approved in December 2004.

18. By e-mail dated October 20, 2005, Waters inquired of the status of the PRB's review.

19. By e-mail dated October 21, 2005, the PRB responded that "[a]ll we can report is that it is still under review and that we are pushing for a timely response."

20. By e-mail dated December 13, 2005, the PRB notified Waters that the "status of our review of your rewritten manuscript 'Class 11' is that we are attempting to set-up a meeting with our fellow reviewers in another office to compare notes. When this is done, we will compose our response to you. Please note that the unapproved manuscript should not be shared with others until final PRB approval is given and that galley proofs must also be approved before publishing." These assertions contradicted prior PRB statements that did not impose any such stated requirements.

21. By e-mail dated December 14, 2005, Waters expressed his surprise at the PRB's statement that additional review is ongoing and its reversal regarding his ability to disseminate the manuscript. He noted that the PRB had failed to respond to him within 30

days as required by law and policy, and had never contacted him to either request or even notify him of any need for an extension of time to complete their review (something that had been down before during the first 2004 review). Therefore, the manuscript had been "copy edited" and "copies provided to reviewers" in anticipation of a stated March 2006 publication date.

22. By letter dated December 29, 2005, Waters forwarded to the PRB a copy of the manuscript's galley proofs. He also noted that this version was the same as the one the PRB received electronically in October 2005.

23. By e-mail dated December 30, 2005, the PRB acknowledged receipt of the manuscript's galley proofs. Waters was informed that he "must wait for our final approval before publishing." Additionally, he was notified that "you do not have the Agency's final approval to publish except for the material we have specifically approved. As with any review where we ask for deletions or changes, you need to resubmit the material or certify in writing that they were made." Thus, again, the PRB contradicted itself, as compared to its e-mail dated December 13, 2005, regarding Waters' ability to disseminate previously approved text.

24. By e-mail dated December 30, 2005, Waters informed the PRB that he believed he had complied with all PRB requirements and regulations.

25. By e-mail dated January 3, 2006, the PRB informed Waters that the 30 day review deadline is "an administrative guidance and, depending on the *complexity and length of the material, can be longer*." (emphasis original). It was also noted that "if we exceed the 30 days, there is not an automatic default of approval – you must wait for our explicit approval to publish (i.e., share the material with someone else)." Upon information and

6

belief, the PRB fails to notify submitters of this policy notwithstanding its knowledge that individuals routinely hold a contradictory interpretation of the PRB asserted review policy. In fact, the PRB Chairman had sent Waters copies of briefing slides he used that specifically noted there was a 30 day deadline. No mention was made of the CIA's ability to extend that deadline.

26. By e-mail dated January 8, 2006, Waters responded that the PRB's interpretation of the 30 day deadline was not consistent with published policies. Additionally, he made clear that the two small sets of changes that were submitted in May and September 2005 "were fully cited from public sources, were fictionalized to mask sensitive information, or were pulled directly from materials previously approved by the PRB."

27. By letter dated February 3, 2006, Waters notified Richard Puhl, Chairman, PRB, that "[h]aving received no redactions or other written correspondence regarding the publisher's galleys for <u>Class II</u> submitted on 29 December 2005, we have finalized the manuscript for publication in April."

28. By facsimile dated February 15, 2006, the PRB notified Waters of dozens of required deletions, which included substantial portions of previously approved text that had undergone PRB/CIA review and had been determined to be unclassified. Upon information and belief, the CIA failed, as required by the applicable Executive Order, to notify the Information Security Oversight Office of these reclassifications. The PRB's letter contained characterizations completely inconsistent with prior PRB policies in general and specifically with respect to prior communications with Waters. The PRB now claimed that legal obligations, never before imposed, prevented Waters from disseminating any copies of the manuscript, much less publishing it, without specific

formal approval from the PRB of the final, ready to be published, document. This statement was logically inconsistent given the fact that the CIA was well aware Waters had sold the manuscript to Dutton in December 2004. The CIA's attitude had changed as well. In a previous communication dated September 1, 2004, the CIA respectfully encouraged Waters to include the disclaimer: "*This material has been reviewed by the CIA. That review neither constitutes CIA authentication of information nor implies CIA endorsement of the author's views.*" Now the CIA demanded as mandatory that the book state: "*All statements of fact, opinion, or analysis expressed are those of the author and do not reflect the official position or views of the Central Intelligence Agency (CIA) or any other U.S. Government agency. Nothing in the contents should be construed as asserting or implying U.S. Government authentication of information or Agency endorsement of the author's views. This material has been reviewed by the CIA to prevent the disclosure of classified information.*"

29. Upon information and belief, the PRB has adopted and is implementing more restrictive policies concerning the publication of any manuscripts by former or current CIA employees. As a result, it is arbitrarily and inconsistently classifying information that is clearly unclassified or was previously approved for publication. This new policy, which emanates from the CIA's Director Porter Goss, is intended to dissuade individuals to publish information, even if unclassified, about their activities with the CIA. Upon further information and belief, the former PRB Chairman, Paul Noel Chretien, left his position as Chairman due to, at least in part, his opposition to the current CIA PRB policies that infringe upon the First Amendment rights of submitters.

30. Waters' book is scheduled for publication on April 6, 2006. Pre-publication orders are already being accepted by such online retailers such as www.Amazon.com. Even though the book has not been issued, it has already, as of the date of this filing, ranked as high as #64,462.

31. Waters' book, now entitled "*Class 11: Inside the CIA's First Post-9/11 Spy Class*", is internally ready for publication. The CIA's delay tactics and reclassification of previously approved information will cost Waters no less than $9,000 should a new version of the book need to be created.

### FIRST CAUSE OF ACTION
### (FIRST AMENDMENT - RIGHT TO PUBLISH - RECLASSIFICATION CHALLENGE)

32. Waters repeats and realleges the allegations contained in paragraphs 1 through 31 above, inclusive.

33. Waters properly submitted, pursuant to one or more secrecy agreements, on different occasions his draft manuscript for prepublication review.

34. The CIA's PRB approved the contents of his manuscript as unclassified more than once following the deletion or accepted modification of specific text. Prior to May 2005, all requested changes were made by Waters to the satisfaction of the PRB. The approval of the PRB of the text at that time permitted Waters to lawfully disseminate the contents to third parties without restriction. As a result the manuscript, as approved, was disseminated to third parties and cannot be reasonably retrieved. Indeed, the manuscript was sold to Dutton in December 2004, and Waters made sure the CIA was timely aware of this fact.

35. The CIA has now reclassified a substantial amount of previously approved text and threatened Waters that if he publishes or disseminates it he will be subject to legal action, which can include civil or criminal penalties, and in particular the attachment of any royalties Waters has or will receive from the publication of the book.

36. Upon information and belief, the CIA failed to abide by lawful requirements that it notify the Information Security Oversight Office when it reclassifies previously approved information.

37. The CIA lacks lawful authority to reverse its previously issued decisions made pursuant to the prepublication review process. All previously approved information remains unclassified and available for dissemination or publication by Waters.

38. The CIA cannot demonstrate the existence of substantial government interests that would enable it to lawfully prohibit the publication of previously approved information within Waters' manuscript. Its actions have imposed unreasonable restrictions on Waters' activities that are protected by the First Amendment.

39. The CIA's restrictions imposed upon Waters have been unduly vague and were not narrowly confined to avoid infringement of his First Amendment rights. They have unnecessarily restricted speech that does not serve to protect any substantial government interest.

40. Because the CIA has impermissibly infringed upon Waters' right to publish the previously approved information contained within his manuscript, they have violated Waters' First Amendment rights. Thus, Waters has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely report on information of public interest, and/or lost or

jeopardized present or future financial opportunities, which impairs his ability to serve the public.

## SECOND CAUSE OF ACTION
### (FIRST AMENDMENT - RIGHT TO PUBLISH - CLASSIFICATION CHALLENGE)

41. Waters repeats and realleges the allegations contained in paragraphs 1 through 31 above, inclusive.

42. Waters properly submitted, pursuant to one or more secrecy agreements, on different occasions his draft manuscript for prepublication review.

43. The CIA's PRB approved the contents of his manuscript as unclassified more than once following the deletion or accepted modification of specific text. Prior to May 2005, all requested changes were made by Waters to the satisfaction of the PRB. The approval of the PRB of the text at that time permitted Waters to lawfully disseminate the contents to third parties.

44. The CIA has now identified classification concerns in the manuscript and denied Waters the right to publish certain information within his book.

45. The CIA reclassified a substantial amount of previously approved text, as well as forbid the publication of information supported by open source material, and threatened Waters that if he publishes or disseminates it he will be subject to legal action, which can include civil or criminal penalties, and in particular the attachment of any royalties Waters has or will receive from the publication of the book.

46. The CIA has failed to show that Waters' First Amendment right to publish is outweighed by the government's interest in efficiently carrying out its mission by minimizing harms that are real, not merely conjecture.

47. The CIA has failed to demonstrate the existence of substantial government interests that would enable it to prohibit the publication of certain information within Waters' memoirs. Moreover, they have imposed unreasonable restrictions on Waters' activities that are protected by the First Amendment.

48. The CIA's restrictions imposed upon Waters have been unduly vague and were not narrowly confined to avoid infringement of his First Amendment rights. They have unnecessarily restricted speech that does not serve to protect any substantial government interest.

49. Most importantly, the CIA has failed to produce explanations with reasonable specificity that demonstrates a logical connection between the information to be deleted and the reasons for classification. The reasons for classification are neither rational nor plausible. In fact, many of the asserted redactions are objectively absurd. Thus, they cannot support the CIA's attempt to censor Waters' book.

50. Because the CIA has impermissibly infringed upon Waters' right to publish the previously approved information contained within his manuscript, they have violated Waters' First Amendment rights. Thus, Waters has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely report on information of public interest, and/or lost or jeopardized present or future financial opportunities, which impairs his ability to serve the public.

**THIRD CAUSE OF ACTION**
**(FIRST AMENDMENT - REFUSAL TO PERMIT**
**REVIEW OF MANUSCRIPT BY COUNSEL)**

51. Waters repeats and realleges the allegations contained in paragraphs 1 through 31 above, inclusive.

52. Waters properly submitted, pursuant to one or more secrecy agreements, on different occasions his draft manuscript for prepublication review.

53. The CIA has identified classification concerns in the manuscript and denied Waters the right to publish specifically identified text.

54. Waters' undersigned counsel possesses the requisite security access needed to review the affected portions of the manuscript, as well as a need-to-know the contents in order to adequately represent his interests through administrative and litigative proceedings. Waters has made a proper determination that his attorney possesses a "need-to-know" the contents of the manuscript.

55. Although in prior PRB cases Waters' undersigned counsel has been granted access to the "classified" information in challenged manuscripts, the CIA now presently takes the position that counsel is not permitted to have access.

56. The CIA's refusal to allow Waters' counsel to review the specific manuscript portions violates his First Amendment rights.

57. Because the CIA has impermissibly infringed upon Waters' right to publish the previously approved information contained within his manuscript, they have violated Waters' First Amendment rights. Thus, Waters has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely report on information of public interest, and/or lost or

jeopardized present or future financial opportunities, which impairs his ability to serve the public.

## FOURTH CAUSE OF ACTION
## (ADMINISTRATIVE PROCEDURE ACT – CHALLENGE TO FINAL AGENCY ACTION; CONSTITUTIONAL VIOLATION)

58. Waters repeats and realleges the allegations contained in paragraphs 1 through 31 above, inclusive.

59. Waters properly submitted, pursuant to one or more secrecy agreements and all applicable regulations, on different occasions his draft manuscript for prepublication review.

60. The CIA is required to respond to prepublication reviewed within 30 days. However, it routinely fails to meet the required deadline and often, as in this case, neglects to seek or notify the submitter of any need for an extension of time.

61. Although the CIA claims it can take more than 30 days to review a document submitted for prepublication review, upon information and belief, the CIA does nothing to ensure submitters are aware of the CIA's perceived policy that it can unilaterally grant itself an extension of time. Nor does the CIA seek to inform submitters that its failure to meet the 30 day deadline does not automatically designate the information as publishable, although it is well aware that submitters believe otherwise. In fact, the CIA has done the opposite by disseminating materials that clearly state there is a 30 day deadline.

62. The CIA routinely fails to abide by the 30 day deadline, but will eventually respond just prior to the initiation or in the early stages of litigation. Thus, this is a controversy that is capable of repeating itself yet evading review thereby permitting oversight by the courts.

63. Prior to 2005, the CIA's PRB provided Waters' expedited processing with respect to the CIA's review of his manuscript. As a result, the CIA approved the contents of his manuscript as unclassified more than once following the deletion or accepted modification of specific text. Prior to May 2005, all requested changes were made by Waters to the satisfaction of the PRB. The approval of the PRB of the text at that time permitted Waters to lawfully disseminate the contents to third parties without restriction. As a result the manuscript, as approved and in compliance with CIA regulations and other applicable provisions, was disseminated to third parties and cannot be reasonably retrieved.

64. The CIA has now reclassified a substantial amount of previously approved text in violation of its own regulations and other applicable provision, and threatened Waters that if he publishes or disseminates it he will be subject to legal action, which can include civil or criminal penalties, and in particular the attachment of any royalties Waters has or will receive from the publication of the book.

65. Upon information and belief, the CIA failed to abide by lawful requirements that it notify the Information Security Oversight Office when it reclassifies previously approved information.

66. The CIA lacks lawful authority to reverse its previously issued decisions made pursuant to the prepublication review process. All previously approved information remains unclassified and available for dissemination or publication by Waters. Additionally, the CIA lacks lawful authority to require Waters to include any disclaimer if he chooses not to do so.

67. The CIA's decision to deny Waters' the ability to publish certain text within his manuscript constitutes final agency action.

68. The CIA, its officers and employees, committed and undertook actions that were arbitrary, capricious and/or an abuse of discretion pertaining to Waters, including, but not limited to, unreasonably delaying issuing prepublication review decisions, issuing decisions approving the release of unclassified information and later reversing those decisions, and attempting to require Waters to publish a disclaimer. These acts are unwarranted by the facts, unsupported by substantial evidence, in violation of internal regulations, federal statutes, other applicable provisions of law, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, thereby causing Waters to suffer legal wrongs under the Administrative Procedure Act.

69. Because the CIA has impermissibly infringed upon Waters' right to publish the previously approved information contained within his manuscript, they have violated Waters' First Amendment rights. Thus, Waters has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, a delay in being able to timely report on information of public interest, and/or lost or jeopardized present or future financial opportunities, which impairs his ability to serve the public.

WHEREFORE, plaintiff Thomas Waters, Jr., requests that the Court award him the following relief:

(1) Issue a temporary and/or permanent injunction to block the CIA from restraining the publication of any portions of his manuscript;

(2) Permanently enjoin the CIA from initiating civil or criminal proceedings against him for past or future publication of any text within his manuscript;

(3) Declare that the gallery proofs of the manuscript do not contain classified information and that he possesses a First Amendment right to publish the contents in their entirety;

(4) Declare that the CIA cannot reverse its PRB decisions once the information has been approved for release;

(5) Declare that all previously approved text of his manuscript is unclassified and can be disseminated and published immediately;

(6) Declare that he possesses a First Amendment right to communicate with his counsel to include discussions involving classified information;

(7) Declare that he possesses the ability to reach need-to-know decisions regarding the disclosure of relevant classified information;

(8) Declare that the CIA violated the Administrative Procedure Act and its internal regulations governing the granting of access to counsel to classified information;

(9) Declare that his counsel possesses a need-to-know relevant classified information concerning the redacted portions of the manuscript;

(10) Declare that the CIA violated the Administrative Procedure Act and its internal regulations governing prepublication review;

(11) Require the CIA to abide by the 30 day deadlines for prepublication review;

(12) Award him the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law;

(13) Pay appropriate compensation to him for any losses suffered or expenses incurred due to the delays associated with the publication of his manuscript; and

(14) grant such other relief as the Court may deem just and proper.

Date:   March 3, 2006

                    Respectfully submitted,

                    /s/

_____

Mark S. Zaid, Esq.
DC Bar #440532
Krieger & Zaid, PLLC
1920 N St., N.W.
Suite 300
Washington, D.C. 20006
(202) 454-2809
ZaidMS@aol.com

Attorney for Plaintiff