# EXHIBIT "30"

## Declaration of Mitchell Hoffman

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS WATERS, JR | * |
| Plaintiff, | * |
| v. | * Civil Action No: 06-383 (RBW) |
| CENTRAL INTELLIGENCE AGENCY | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF MITCH HOFFMAN

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge. This Declaration is submitted in support of the plaintiff's Motion for a Permanent Injunction Or, Alternatively, For A Preliminary Injunction.

2. I am the editor assigned by Dutton, a division of Penguin Group (USA) Inc., to work with the plaintiff, Thomas Waters, Jr., on the publication of his book entitled *CLASS 11* (the "Work"). Dutton had first reviewed a proposal for the Work during the Winter of 2004, and negotiations began at that time with the plaintiff to purchase the publishing rights. By an agreement dated February 4, 2005, Dutton obtained from plaintiff certain publishing rights in the Work, which is about his experiences as a member of the first post-September 11 class of CIA trainees.

3. The publishing contract provides for plaintiff to receive an advance of a certain sum against anticipated royalties, payable in four equal installments on (a) execution of the

contract, (b) delivery and acceptance by Dutton of a satisfactory manuscript, (c) first publication of the hardcover edition, and (d) first publication of the paperback edition.

4. On May 23, 2005, plaintiff submitted to Dutton a complete, unedited draft of the manuscript. Page 3 of that manuscript bore the following legend:

> This material has been reviewed by the CIA. That review neither constitutes CIA authentication of information nor implies CIA endorsement of the author's views. – Publication Review Board, CIA.

5. Over the ensuing months I worked with the plaintiff to edit the manuscript into a publishable work. During that time, I requested the plaintiff to make certain changes to the existing text in order to, among other reasons, tighten the writing, or help clarify content for the prospective reader who might not be familiar with the topic. Many of the changes were nothing more than edits of punctuation, spelling and grammar. The few substantive additions that were made were primarily references from the public record that Dutton wanted to see expanded.

6. In August 2005, Dutton tentatively scheduled publication of the Work for March 2006, and included it in Dutton's Winter 2006 catalogue, which is distributed to the book-publishing trade and to the media.

7. In mid-September 2005, plaintiff advised me that he would submit the revised manuscript, even though many of the changes were the result of our editing, to the CIA's Publication Review Board ("PRB") with a request for quick turn-around, given the Spring 2006 publishing date. Plaintiff also informed me at that time that the CIA requested that the published Work include the statement quoted above in paragraph 4.

8. On October 15, 2005, I received from plaintiff what I understood to be the final, revised manuscript. This version merely reflected the changes that I had requested and coordinated with the plaintiff during the editing process.

9. On October 21, 2005, I sent that manuscript to Dutton's production department for copyediting. That same day I approved payment to plaintiff of the second installment of his advance due on Dutton's acceptance of the manuscript for publication.

10. In late November 2005, I initiated the process for printing the Work as a hardcover book. On December 19, 2005, I sent to plaintiff two sets of what are called "first-pass pages," essentially galleys of what the final book will be.

11. By email on January 4 and 6, 2006, plaintiff informed me that he had sent one set of first-pass pages to the PRB, which acknowledged receipt on December 30, 2005. In those messages plaintiff also stated that he did not expect any issues with the PRB because the first-pass pages were substantively the same as the manuscript that had been submitted to the PRB in the Fall of 2005 and they had not informed him of any concerns with the text.

12. On February 17, 2006, plaintiff notified Dutton that the PRB had asked for additional redactions in the manuscript that he had submitted for PRB review in September 2005 (see ¶7 above).

13. Before Dutton received notice from plaintiff of the PRB's eleventh-hour request, it had taken all steps necessary to publish the Work on April 6, 2006. Specifically, the final pages, dust jackets and hardcover "casings" are already printed. Dutton needs only to bind these materials to produce finished books.

14. Stopping publication of the Work at this juncture would have the following deleterious consequences:

    a. Destroying the existing printed pages, and reprinting anew, will add at least $9,100.00 to the cost of publishing the Work. The sum could double or increase even more, depending on the extent of the new revisions now being requested by the PRB. Plaintiff is responsible for these additional costs under the publishing contract.

    b. Printing new pages will require another twelve weeks, and another four to six weeks to distribute the books once bound.

    c. Pushing back the publication date from April 6, 2006 (which will be necessary if plaintiff does not have clearance to publish without further changes by March 10, 2006), to no earlier than August 2006, will:

        i. lose for the Work the expected momentum from reviews based on the first-pass pages that I had distributed to the media in January 2006, and from inclusion of the Work in Dutton's Winter 2006 catalogue;

        ii. likely result in the cancellation of some of the orders now in Dutton's system, because of the unwillingness of retailers and wholesalers to keep such orders unfilled for an indefinite period;

        iii. delay publication of the audio edition, which must await publication of the final print edition; and

        iv. harm plaintiff economically, because of (A) the momentum lost from publication so many months after the reviews and after distribution of the Winter 2006 catalogue, (B) the cancellation of orders for the hardcover edition,

4

(C) the delay in publication of the audio and paperback editions, (D) plaintiff's obligation to pay for all additional costs that Dutton might incur in reprinting the Work, and (E) the delays in payment to plaintiff of the remaining two installments of the advance, which are geared to publication of the hardcover and paperback editions.

I do solemnly affirm under the penalties of perjury that the contents of the foregoing Declaration are true to the best of my knowledge.

Date: March 7, 2006

/s/
_____
Mitch Hoffman