UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS WATERS, JR.,

Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant.

No. 1:06cv00383-RBW

JOINT SUBMISSION OF APPLICABLE REGULATIONS

Attached hereto as Ex. A is the regulation of defendant concerning prepublication reviews applicable prior to July 22, 2005. Attached hereto as Ex. B is the regulation of defendant concerning prepublication reviews applicable from and after July 22, 2005. Redactions are for relevance.

Respectfully submitted,

Mark Zaid by David M Glass per telephonic authorization

Mark S. Zaid, Esq.
DC Bar #440532
Krieger & Zaid, PLLC
1920 N St., N.W.
Suite 300
Washington, D.C. 20036
(202) 454-2809
ZaidMS@aol.com

Attorney for Plaintiff

PETER D. KEISLER
Assistant Attorney General
KENNETH L. WAINSTEIN
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

David M Glass

DAVID M. GLASS, DC Bar 544549
Attorney, Department of Justice
20 Mass. Ave., N.W., Room 7140
Washington, D.C. 20530
Tel: (202) 514-4469/Fax: (202) 616-8470
E-mail: david.glass@usdoj.gov

Attorneys for Defendant

Dated: May 25, 2006

*Waters v. CIA*
No. 1:06-cv-00383-RBW

Jt. Submission of Applicable Regs.
Ex. A

PUBLIC AFFAIRS [redacted]

2. AGENCY REVIEW OF MATERIAL INTENDED FOR NONOFFICIAL PUBLICATION

Note: The address and phone numbers on page 4 (8) have changed to:

Publications Review Board
[redacted]
Central Intelligence Agency
Washington, D.C. 20505
[redacted]

Regulation [redacted] follows on succeeding pages.

PUBLIC AFFAIRS

2. AGENCY REVIEW OF MATERIAL INTENDED FOR NONOFFICIAL PUBLICATION

SYNOPSIS. This regulation sets forth policy and procedures that govern the submission and review of material intended for nonofficial publication by current and former Agency employees and others obligated to protect from unauthorized disclosure certain information they obtain as a result of their affiliation with CIA. It also reflects the responsibilities for prepublication review of the Publications Review Board ("PRB" or "Board") and other Agency components.

a. AUTHORITY. The National Security Act of 1947, as amended; the CIA Act of 1949, as amended; and Executive Order 12333 require the Director of Central Intelligence to protect intelligence sources and methods from unauthorized disclosure. Executive Order 12356 requires protection of classified information from unauthorized disclosure. Employees and others who have been authorized access to information the public disclosure of which could harm the national security incur special obligations to protect such information. These obligations have been embodied in secrecy agreements.

b. GENERAL

(1) Based on the above obligations and responsibilities, this regulation requires all current and former Agency employees, and others obligated by contract, to submit for prior review by CIA all materials (defined in paragraph f(1) and (2) below) intended for nonofficial publication.* This regulation also establishes standards for review.

(2) It is the Agency's policy to adopt and implement all lawful measures to protect from unauthorized disclosure information which, if disclosed, could damage the national security, and to ensure that individuals given access to such information understand and comply with their obligation not to disclose it. Prior review by the Agency of material intended for nonofficial publication is a key component of efforts to prevent unauthorized disclosures. The purpose of prepublication review is twofold: to assist individuals in meeting their obligations and to ensure that information damaging to the national security is not disclosed inadvertently. Prior restraint of publication imposed by the Agency in implementing this policy has been judicially upheld where the Agency acts without undue delay, as a general rule meaning within 30 days of receipt of the material to be reviewed.

(3) In conducting prepublication review, the Agency's policy is to:

(a) Identify information for deletion or revision only to the extent necessary to protect information the disclosure of which could harm national security;

(b) Respond in a timely manner to specific inquiries from individuals as to whether particular material must be submitted for review or about any other aspect of the review process or the Agency's substantive determination; and

(c) Provide for administrative appeal of the initial determinations.

Revised: 14 March 1995 (0036)

                                    c. AUTHOR RESPONSIBILITIES

(1) Current and former Agency employees are obligated to submit material intended for nonofficial publication for prepublication review. Agency contractors and others who sign secrecy agreements with the Agency must also submit such material for prepublication review in accordance with their secrecy agreements.

(2) Submission to the Agency must be made prior to disclosing such information to anyone who is not authorized by the Agency to have access to it. The responsibility rests with the author to learn from the Agency whether the material intended for publication fits the description set forth in this paragraph. Prepublication review obligations cannot be avoided by causing another person, such as a ghostwriter, spouse, friend, or associate, to prepare the material. Revelation of information damaging to the national security to any person not authorized to receive it is prohibited.

(3) Current employees must also submit material that could reasonably be expected to impair the performance of their duties, interfere with the authorized functions of the Agency, or have an impact on the foreign relations or security of the United States.

(4) If a person with prepublication review obligations is asked to comment on the nonofficial intelligence-related materials of others not so obligated (for example, to review a book by a nongovernment author prior to publication), the CIA author should treat his or her comments as a proposed nonofficial publication subject to this regulation. If upon submission the reviewing official determines that it is necessary to review all or part of the underlying text to evaluate the comments, the CIA author should obtain the outside author's consent before submitting the relevant parts of any unpublished text to the Agency for review.

(5) Authors of material submitted to the Agency are expected to cooperate with and assist the review process. When an author claims that information intended for nonofficial publication is unclassified because it has already appeared in public, the author may be called upon to identify any open sources for information that, in the Agency's judgment, originates from classified sources. Failure or refusal to identify such public sources or otherwise to cooperate may result in refusal of authorization to publish the information in question. The author also may be requested to cite the source in a footnote.

(6) Should a person subject to the prepublication review obligation learn that another person also subject to the prepublication review obligation is preparing material intended for nonofficial publication that may contain information requiring Agency approval for public release, he or she should remind the author of the requirement to submit the material to the PRB or through his or her chain of command, as appropriate, for Agency review.

(7) It is not possible to anticipate all questions that may arise about which materials require prepublication review. Therefore, it is the author's obligation to seek guidance on all prepublication review issues not explicitly covered in this regulation.

d. PROCEDURES FOR SUBMITTING MATERIAL FOR REVIEW

(4) Former employees and others not currently affiliated with the Agency must submit material intended for nonofficial publication to the Board (see paragraph (8) for address). The Chair will notify them of the Board's findings and act as primary spokesperson for the Agency in all communications concerning prepublication review.

(6) Authors who are directed to delete material in accordance with this regulation are required to submit their revisions to the Agency for final review.



(7) Persons preparing material for nonofficial publication are invited at any stage to discuss their plans with the Chair, PRB, the PRB legal adviser, or an authorized representative specifically designated for this purpose. The views of the Agency may be given only by one of these individuals. Anyone acting in reliance on views expressed by any person other than such authorized Agency representative must assume responsibility for the consequences of that action.

(8) [redacted] authors should direct questions to the Chair, Publications Review Board, [redacted] Overt authors outside the Agency should include "Central Intelligence Agency, Washington, DC 20505" in the address. [redacted]

e. AGENCY ORGANIZATION AND RESPONSIBILITIES

(1) The Board consists of a Chair designated by the Director of Information Technology and senior representatives from the Directorate of Operations, the Directorate of Administration, the Directorate of Science and Technology, the Directorate of Intelligence, the Office of the Associate Deputy Director for Administration/Information Services, the Office of Personnel Security, and the cover unit. The Board members are nominated by the appropriate Deputy Director or Operating Official for the concurrence of the Director of Information Technology. The Office of General Counsel provides a legal adviser. The Board will meet as required at the call of the Chair to ensure that the provisions of this regulation are met.

(2) The Chair will ensure that appropriate reviewers are assigned to review submitted material. If the reviewers unanimously decide that it is unobjectionable under the standards and criteria listed above, the Chair will notify the author through the appropriate channels. If any reviewer objects to publication, the matter will be resolved upon consultation with the Chair or at a Board meeting.

(3) The Chair is authorized unilaterally to represent the Board when disclosure of submitted material so clearly would not harm national security that additional review is unnecessary or when time constraints or other unusual circumstances make it impractical or impossible to convene or consult the Board. The Chair may also determine that the subject of the material is so narrow or technical that only certain Board members need be consulted.

(4) The Agency will make every effort to complete the initial review of submitted material and respond to authors within 30 days of receipt by the PRB or other reviewing official.

f. MATERIALS TO BE SUBMITTED FOR PREPUBLICATION REVIEW

(1) Material which must be submitted for prepublication review consists of all writings and scripts or outlines of oral presentations intended for nonofficial publication, including works of fiction, which contain any mention of the CIA, intelligence data or

intelligence activities, or material on any subject about which the author has had access to classified information in the course of his or her employment or other CIA affiliation.

(2) The prepublication review obligation is not limited to any particular category of materials or methods of presentation or publication. It applies to both oral and written materials. With respect to written materials, it applies not only to books but to all other forms of written materials or prepared statements intended for public dissemination, such as (but not limited to) newspaper columns, magazine articles, letters to the editor, book reviews, pamphlets, scholarly papers, and nonofficial testimony prepared in advance of presentation, whether it is before a Federal or state investigative commission, a Congressional body, a judicial forum (unless the witness is a defendant in a criminal case in the United States), or any other similar proceeding. (Current employees who must make court appearances and respond to subpoenas should contact the Office of General Counsel.) Because works of fiction are often based upon and/or can be used to convey factual information, fictional accounts of the Agency or of intelligence activities are also covered. Material created or disseminated through electronic or other media also is subject to this regulation.

g. MATERIALS NOT SUBJECT TO REVIEW

(1) The prepublication review requirement does not apply to material that is totally unrelated to intelligence or employment matters, such as cooking, gardening, or purely domestic political matters.

(2) Material that consists solely of personal views, opinions, or judgments on matters of public concern and does not contain or purport to contain any mention of the CIA, intelligence activities or data, or information on any topic about which the author had access to classified information, is not subject to the prepublication review requirement. For example, a person with prepublication review obligations is free without prior review to submit testimony to Congress to make public speeches or publish articles on such topics as proposed legislation as long as the material prepared for public use is not classified, does not state or imply facts about intelligence activities or substantive intelligence information, or, in the case of current employees or contractors, impair the performance of their duties or the authorized functions of the Agency or adversely affect foreign relations or national security.

(3) In some circumstances the expression of what purports to be an opinion may in fact convey information subject to prior review. For example, a former intelligence analyst's opinion that the United States can or cannot verify compliance with strategic arms limitation agreements is an implied statement of fact about Agency activities and substantive intelligence information and would be subject to prior review. This does not mean that such a statement would necessarily require deletion, but merely that the subject matter requires review by the Agency before publication. However, discussion limited to the desirability of a proposed arms limitation agreement based solely on analysis of its provisions, without any discussion of intelligence information or activities, would not require prior review.

(4) Descriptions of Agency activities will require prior review. A person subject to the prepublication review obligation who writes or speaks about areas of national policy as an observer outside the government, without relying or purporting to rely on classified information, intelligence information, or other similar information does not have to submit such materials for prior review. While some "gray areas" may exist, persons preparing material intended for nonofficial publication are expected to err on the side of prepublication review.

h. ORAL STATEMENTS The prepublication review requirement applies to material that the person contemplates presenting publicly or actually has prepared to public presentation. Thus, a person is not in breach of the prepublication review requirement if he or she participates extemporaneously and without prior preparation in an oral expression of information (for example, news interview, panel discussion, and unrehearsed speech) and does not submit material for review in advance. Where an individual has been asked to speak or testify on matters that normally would be subject to prior review and has actually prepared for the speaking engagement or testimony in advance by making notes, drafting an outline, rehearsing with an associate, or otherwise, the exception for extemporaneous oral expression does not apply. Moreover, making a genuinely extemporaneous oral statement does not exempt an individual from liability for any unauthorized disclosure of information damaging to the national security that he or she may make in the course of such expression. Persons subject to the prepublication review obligation are encouraged to seek guidance from the PRB before granting such interviews or agreeing to make such appearances.

i. STANDARDS OF REVIEW

(1) The Agency may deny permission for nonofficial publication of any information obtained during the course of employment or other service with the CIA that has not been placed in the public domain by the U.S. Government and if disclosure reasonably could be expected to harm the national security interests of the United States.

(2) Permission to publish will not be denied solely because the statement may be embarrassing to or critical of the Agency.

(3) Where information contained in material intended for nonofficial publication is available to the author from classified sources and also independently from open sources, the author may be permitted to republish the information if he or she can cite an adequate open source publication and if republication of the information by that author at the time of review will not cause additional damage to the national security through authoritative confirmation of previous publications. The Board will exercise due care and discretion in making these determinations on a case-by-case basis and include as factors in its decision the following: the sensitivity of the information from classified sources, the number and currency of these previous publications, the level of detail previously exposed, the source of the previous disclosures (whether authoritative and acknowledged or an anonymous "leak"), the new author's access to classified sources, and the authority and credibility his or her Agency experience brings to a confirmatory statement. The Board may give permission to publish contingent on the author's citation of open sources in a footnote.



(5) Approval for publication does not represent Agency endorsement or verification of, or agreement with, the subject matter. Therefore, consistent with cover status, authors are encouraged (current employees are required, unless waived by supervisors) to publish the following disclaimer: "This material has been reviewed by the CIA. That review neither constitutes CIA authentication of information nor implies CIA endorsement of the author's views." An employee's supervisors may also amend the wording of this disclaimer, when appropriate, provided the Chair, PRB, is notified of the variance.

j. BREACH

(1) Prepublication review allows the Agency to determine whether material contemplated for nonofficial publication contains information which, if disclosed, could harm national security, and gives the Agency an opportunity to prevent the public disclosure of such information. Prior review means that written materials are submitted to the Agency before being circulated to publishers, editors, literary agents, coauthors, reviewers, or the public at each stage of their development. This prior review requirement is intended to prevent comparison of different versions of such material, which would reveal what items had been deleted by the Agency. For this reason, review of the material after it has been submitted to publishers, reviewers, or other outside parties does not satisfy an author's prepublication review obligation. The Agency reserves the right to review any such material in order to take necessary protective action to mitigate damage caused by disclosure. Such review and action does not preclude the U.S. Government and the Agency from exercising the legal rights otherwise available.

(2) The Office of General Counsel will be notified in all cases when a possible violation of prepublication obligation occurs. Failure to comply with prepublication review obligations can result in the imposition of civil or criminal penalties. The Office of General Counsel will report all potentially criminal conduct to the Department of Justice. The Agency will not make such reports, or make any recommendation to the Department of Justice regarding any action, civil or criminal, on the basis of the expressed or presumed animus of a person toward the U.S. Government or the Agency.

k. APPEAL

(1) Authors who wish to appeal decisions should address such appeals in writing to the Executive Director of the Agency, accompanied by the material intended for nonofficial publication and any supporting materials the author wishes the Executive Director to consider. On behalf of the Executive Director, the Chair, PRB, will forward the appeal and relevant documentation through the senior Operating Officials of the affected component to each Deputy Director or Head of Independent Office

whose representative on the Board objected to information in the material at issue. The Deputy Director or Head of Independent Office will affirm or recommend revision of the Board's decision affecting his or her equities and will forward that recommendation to the General Counsel. The General Counsel will review the recommendations for legal sufficiency and will make a recommendation to the Executive Director for a final Agency decision. Every effort will be made to complete the appeal process within 30 days.

(2) This regulation is intended to provide direction and guidance for those persons who have prepublication review obligations and those who review material submitted for nonofficial publication. Nothing contained in this regulation or in any procedures promulgated to implement this regulation is intended to confer, and does not confer, any substantive or procedural right or privilege on any person or organization.

---

*"Publication" in this context means communicating information to one or more persons. "Nonofficial publication" is a work prepared by the author as a private individual, not as a government employee or contractor acting in an official capacity.

*Waters v. CIA*
No. 1:06-cv-00383-RBW

Jt. Submission of Applicable Regs.
Ex. B

~~ADMINISTRATIVE - INTERNAL USE ONLY~~

**Date:** 07/22/2005

**Category:** █ - Public Affairs **OPR:** █

**Title:** █ (U) AGENCY PREPUBLICATION REVIEW OF CERTAIN MATERIAL PREPARED FOR PUBLIC DISSEMINATION

This regulation was written by █ █.

**2. AGENCY PREPUBLICATION REVIEW OF CERTAIN MATERIAL PREPARED FOR PUBLIC DISSEMINATION**

SYNOPSIS: This regulation sets forth CIA polices and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contact with the CIA. This regulation applies to all forms of dissemination, whether in written, oral, electronic, or other forms, and whether intended to be an official or nonofficial (that is, personal) publication.

**a. AUTHORITY**

The National Security Act of 1947, as amended, the CIA Act of 1949, as amended, and Executive Order 12333 require the protection of intelligence sources and methods from unauthorized disclosure. Executive Order 12958, as amended, requires protection of classified information from unauthorized disclosure. 18 U.S.C. section 209 prohibits a federal employee from supplementation of salary from any source other than the U.S. Government as compensation for activities related to the employee's service as a Government employee. The *Standards of Ethical Conduct for Employees of the Executive Branch* (5 C.F.R. 2635) are the Government-wide ethics regulations that govern Federal employees. Those regulations include restrictions on outside activities and compensation for teaching, speaking, and writing related to official duties. In Snepp v. U.S., 444 U.S. 507 (1980), the Supreme Court held that individuals who have been authorized access to CIA information the public disclosure of which could harm the national security hold positions of special trust and have fiduciary obligations to protect such information. These obligations are reflected in this regulation and in CIA secrecy agreements.

**b. GENERAL REQUIREMENTS AND DEFINITIONS**

(1) The CIA requires all current and former Agency employees and contractors, and others who are obligated by CIA secrecy agreement, to submit for prepublication review to the CIA's Publications Review Board (PRB) all intelligence-related materials intended for publication or public dissemination, whether they will be communicated in writing, speeches, or any other method; and whether they are officially sanctioned or represent personal expressions, except as noted below.

(2) The purpose of prepublication review is to ensure that information damaging to the national security is not disclosed inadvertently; and, for current employees and contractors, to ensure that neither the author's performance of duties, the Agency's mission, nor the foreign relations or security of the U.S. are adversely affected by publication.

(3) The prepublication review requirement does not apply to material that is unrelated to intelligence, foreign relations, or CIA employment or contract matters (for example, material that relates to cooking, stamp collecting, sports, fraternal organizations, and so forth).

(4) Agency approval for publication of nonofficial, personal works (including those of current and former employees and contractors and covered non-Agency personnel) does not represent Agency endorsement or verification of, or agreement with, such works. Therefore, consistent with cover status, authors are required, unless waived in writing by the PRB, to publish the following disclaimer:

"All statements of fact, opinion, or analysis expressed are those of the author and do not reflect the official positions or views of the Central Intelligence Agency (CIA) or any other U.S. Government agency. Nothing in the contents should be construed as asserting or implying U.S. Government authentication of information or CIA endorsement of the

author's views. This material has been reviewed by the CIA to prevent the disclosure of classified information."

(5) Those who are speaking in a nonofficial capacity must state at the beginning of their remarks or interview that their views do not necessarily reflect the official views of the CIA.

(6) A nonofficial or personal publication is a work by anyone who has signed a CIA secrecy agreement (including a current or former employee or contractor), who has prepared the work as a private individual and who is not acting in an official capacity for the Government.

(7) An official publication is a work by anyone who has signed a CIA secrecy agreement, (including a current employee or contractor), such as an article, monograph, or speech, that is intended to be unclassified and is prepared as part of their official duties as a Government employee or contractor acting in an official capacity.

(8) "Publication" or "public dissemination" in this context means:
   (a) for nonofficial (that is, personal) works -- communicating information to one or more persons; and
   (b) for official works - communicating information in an unclassified manner where that information is intended, or is likely to be, disseminated to the public or the media.

(9) Covered non-Agency personnel means individuals who are obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contact with the CIA.

## c. THE PUBLICATIONS REVIEW BOARD

(1) The PRB is the Agency body charged with reviewing, coordinating, and formally approving in writing all proposed nonofficial, personal publications that are submitted for prepublication. It is also responsible for coordinating the official release of certain unclassified Agency information to the public. The Board consists of a Chair and an Executive Secretary -- designated by and reporting directly to the Chief, Information Management Services (IMS) – with the rest of the Board membership composed of senior representatives from the Director of CIA Area, the Directorate of Operations (DO), the Directorate of Support, the Directorate of Science and Technology, the Directorate of Intelligence, the Security Center, and the DO's Global Deployment Center, who are designated by the appropriate Deputy Director, or Operating Official with C/IMS concurrence. The Office of General Counsel (OGC) provides a nonvoting legal advisor.

(2) The PRB shall adopt and implement all lawful measures to prevent the publication of information that could damage the national security or foreign relations of the U.S. or adversely affect the CIA's functions or the author's performance of duties, and to ensure that individuals given access to classified information understand and comply with their contractual obligations not to disclose it. When the PRB reviews submissions that

involve the equities of any other agency, the PRB shall coordinate its review with the equity owning agency.

(3) The PRB Chair is authorized unilaterally to represent the Board when disclosure of submitted material so clearly would not harm national security that additional review is unnecessary or when time constraints or other unusual circumstances make it impractical or impossible to convene or consult with the Board. The Chair may also determine that the subject of the material is so narrow or technical that only certain Board members need to be consulted.

**d. CONTACTING THE PRB**

(1) Former employees and contractors and other covered non-Agency personnel must submit covered nonofficial (personal) materials intended for publication or public dissemination to the PRB by mail, fax, or electronically as follows:



(2) Current employees and contractors must submit covered nonofficial and official materials intended for publication or public dissemination to the PRB by mail, fax, or electronically as follows:

Internal Mail:
Classified Facsimile:
Email:
Secure Phone:

(3) Current employees and contractors intending to publish or speak on a nonofficial, personal basis must also complete and submit to the PRB an electronic cover memorandum identifying their immediate supervisor or contracting officer. The PRB will notify the appropriate Agency manager or contracting officer, whose concurrence is necessary for publication.

(4) Review Timelines. As a general rule, the PRB will complete prepublication review for nonofficial publications within 30 days of receipt of the material. Relatively short, time-sensitive submissions (for example, op-ed pieces, letters to the editor, and so forth) will be handled as expeditiously as practicable. Lengthy or complex submissions may require a longer period of time for review, especially if they involve intelligence sources and methods issues. Authors are strongly encouraged to submit drafts of completed works, rather than chapters or portions of such works.

e. **WHAT IS COVERED**

(1) Types of Materials. The prepublication review obligation applies to any written, oral, electronic, or other presentation intended for publication or public dissemination, whether personal or official, that mentions CIA or intelligence data or activities or material on any subject about which the author has had access to classified information in the course of his employment or other contact with the Agency. The obligation includes, but is not limited to, works of fiction; books; newspaper columns; academic journal articles; magazine articles; resumes or biographical information on Agency employees (submission to the PRB is the exclusive procedure for obtaining approval of proposed resume text); draft *Studies in Intelligence* submissions (whenever the author is informed by the *Studies* editor that the draft article is suitable for *Studies* Editorial Board review); letters to the editor; book reviews; pamphlets; scholarly papers; scripts; screenplays; Internet blogs, e-mails, or other writings; outlines of oral presentations; speeches; or testimony prepared for a Federal or state or local executive, legislative, judicial, or administrative entity; and Officers in Residence speeches and publications (although oral and written materials prepared by OIRs exclusively for their classroom instructional purposes are not covered, OIRs must take particular care to ensure that any anecdotes or other classroom discussions of their Agency experiences do not inadvertently reveal classified information). Materials created for submission to the Inspector General and/or the Congress under the Whistleblower Protection Act and CIA implementing regulations

are nonofficial, personal documents when they are initially created and the author is entitled to seek a review by the PRB to determine if the materials contain classified information and, if so, the appropriate level of classification of the information. If, at any point during or after the whistleblower process, the author wishes to disseminate his whistleblower complaint to the public, the author must submit his complaint to the PRB for full prepublication review under this regulation. If the author is a current employee or contractor who intends to disseminate his whistleblower complaint to the public, the author must also obtain PRB review of his materials under paragraph g below.

(2) Review of Draft Documents. Written materials of a nonofficial, personal nature covered by the regulation must be submitted to the PRB at each stage of their development before being circulated to publishers, editors, literary agents, coauthors, ghost writers, reviewers, or the public (that is, anyone who does not have the requisite clearance and need-to-know to see information that has not yet been reviewed, but may be classified). This prepublication review requirement is intended to prevent comparison of different versions of such material, which would reveal the items that the Agency has deleted. For this reason, PRB review of the material only after it has been submitted to publishers, reviewers, or other outside parties violates the author's prepublication review obligation. The Agency reserves the right to conduct a post-publication review of any such material in order to take necessary protective action to mitigate damage caused by such a disclosure. Such post-publication review and action does not preclude the U.S. Government or the CIA from exercising any other legal rights otherwise available as a result of this prepublication violation. Additionally, the Agency reserves the right to require the destruction or return to CIA of classified information found to have been included in earlier versions of a work regardless of the form of the media involved (for example, paper, floppy disk, hard disk, or other electronic storage methods).

(3) Public Presentations:

(a) With respect to current and former employees and contractors and covered non-Agency personnel making intelligence-related speeches, media interviews, or testimony, they must submit all notes, outlines, or any tangible preparatory material to the PRB for review. Where no written material has been prepared specifically in contemplation of the speech, interview, or oral testimony, the individual must contact the PRB Chair or his representative to provide a summary of any and all topics that it is reasonable to assume may be discussed, and points that will or may be made. Unprepared or unrehearsed oral statements do not exempt an individual from possible criminal liability in the event they involve an unauthorized disclosure of classified information.

(b) In addition, with respect to current employees and contractors making official or nonofficial oral intelligence-related statements to the media or to groups where the media will likely be in attendance, prior to granting interviews or making public appearances, the speaker shall contact the PRB for guidance. The PRB will coordinate the review of proposed speeches or media interviews with the component involved, the Office of Public Affairs for guidance regarding media or press relations, and other offices as necessary.

(c) Current employees who must make court appearances or respond to subpoenas must contact OGC for guidance.

(4) Official Publications. The publication or public dissemination of official Agency information by any means, including electronic transmissions, such as Internet and unclassified facsimile, is subject to prepublication review. In addition to the types of materials listed in paragraph e(1) above, official publications subject to this review include unclassified monographs; organizational charts; brochures; booklets; flyers; posters; advertisements; films; slides; videotapes; or other issuances, irrespective of physical media such as paper, film, magnetic, optical, or electronic, that mention CIA or intelligence data or activities or material on any subject about which the author has had access to classified information in the course of his employment or other association with the Agency.

(6) Additional PRB Guidance. It is not possible to anticipate all questions that may arise about which materials require prepublication review. Therefore, it is the author's obligation to seek guidance from the PRB on all prepublication review issues not explicitly covered by this regulation.

**f. PREPUBLICATION REVIEW GUIDELINES FOR FORMER EMPLOYEES AND CONTRACTORS, AND COVERED NON-AGENCY PERSONNEL**

(1) All material proposed for publication or public dissemination must be submitted to the PRB Chair, as described in paragraph d(1) above. The PRB Chair will have the responsibility for the review, coordination, and formal approval in writing of submissions in coordination with appropriate Board members.

(2) The PRB will review material proposed for publication or public dissemination solely to determine whether it contains any classified information. Permission to publish will not be denied solely because the material may be embarrassing to or critical of the Agency. Former employees, contractors, or non-Agency personnel must obtain the written approval of the PRB prior to publication.

(3) When it is contemplated that a co-author who has not signed a CIA secrecy agreement will contribute to a publication subject to prepublication review, the final version of the publication must clearly identify those portions of the publication that were authored by the individual subject to the secrecy agreement. Where there is any ambiguity concerning which individual wrote a section, and the section was not submitted for review, the Agency reserves the right to consider the section to be entirely written by the individual subject to the secrecy agreement and therefore in violation of the individual's prepublication review obligations.

(4) When otherwise classified information is also available independently in open sources and can be cited by the author, the PRB will consider that fact in making its determination on whether that information may be published with the appropriate citations. Nevertheless, the Agency retains the right to disallow certain open-source information or citations where, because of the author's Agency affiliation or position, the reference might confirm the classified content.





**h. APPEALS**

(1) If the PRB denies all or part of a proposed nonofficial publication, the author may submit additional material in support of publication and request reconsideration by the PRB. In the event the PRB denies the request for reconsideration, the author may appeal. PRB decisions involving nonofficial publications may be appealed to the Executive Director (EXDIR) within 30 days of the decision. Such an appeal must be in writing and must be sent to the PRB Chair. Appeal documentation must include the material intended for publication and any supporting materials the appealing party wishes the EXDIR to consider. The PRB Chair will forward the appeal and relevant documentation through the components that objected to publication of the writing or other product at issue. The Deputy Director or Head of Independent Office will affirm or recommend revision of the

decision affecting his or her component's equities and will forward that recommendation to OGC. OGC will review the recommendations for legal sufficiency and will make a recommendation to the EXDIR for a final Agency decision. The PRB Chair is responsible for staff support to the EXDIR. The EXDIR will render a written final decision on the appeal. Best efforts will be made to complete the appeal process within 30 days from the date the appeal is submitted.

(2) This regulation is intended to provide direction and guidance for those persons who have prepublication review obligations and those who review material submitted for nonofficial or official publication. Nothing contained in this regulation or in any practice or procedure that implements this regulation is intended to confer, or does confer, any substantive or procedural right or privilege on any person or organization beyond that expressly stated herein.

## i. BREACH OF SECRECY AGREEMENT

Failure to comply with prepublication review obligations can result in the imposition of civil penalties or damages. When the PRB becomes aware of a potential violation of a CIA secrecy agreement, it will notify OGC and the Security Center. After Security Center review and investigation of the case is completed, if further action is deemed warranted, the Security Center will refer the matter to OGC, which will report all potentially criminal conduct to the Department of Justice (DoJ) and consult with DoJ regarding any civil remedies that may be pursued.

/s/
Porter J. Goss
Director of the Central Intelligence Agency